Green, J.
delivered the opinion of the court.
This is a bill for divorce, alleging that the defendant has been guilty of gross abuse of the complainant, and of personal violence; so that her situation was rendered intolerable, compelling her to withdraw from his society.
The defendant’s answer denies the use of abusive language, or that he has been guilty of personal violence towards the complainant, except that in one instance, when greatly irritated, he slapped her face with his hand.
There is much evidence in the record, in relation to the conduct of the parties towards each other; but it is unnecessary to analyze the proof particularly, with a view to arrive at a correct conclusion in the case. One or two of the witnesses speak of the complainant a,s high-tempered, and doubtless, under the *501 influence of the irritating indignities which the defendant was in the habit of inflicting upon her, she sometimes felt and exhibited resentment. But the great body of testimony from witnesses who have known her from early girlhood, establishes for the complainant a most exemplary character. Ladies of the highest respectability, her early companions, say she was sensible, well informed, and most amiable in her disposition and temper. Gentlemen in the first walks in society, in whose families she was intimate during her cohabitation with the defendant, give her the same character. Both parties were members of the Methodist Church. The ministers of that church, and other members, speak of the complainant’s Christian character in the highest terms; but of that of the defendant in equivocal language. The defendant was peevish and ill natured, given to scolding and fault-finding. In an interview with the complainant, after the separation, he admitted, in presence of Mr. Littlejohn, that he had threatened to drive complainant from his house, but that he would have her debts to pay; and that he was in the habit of using such language to her, as is not usual to be addressed to slaves. To Mr. L. P.'Williamson, he admitted he had slapped her, and when charged with having also choked her, he evaded, but did not deny it. To Mr. James M. Williamson, he admitted, that he had, at family devotion, prayed the Lord to deliver him from his wife, in whatever way he might think best; and this he justified to Mr. Williamson saying the prayer was right. As to the indignities of language, and personal violence, he excused himself by alleging, that he was in a passion. But as to the prayer, infinitely the greatest indignity of them all, to a pious and sensible mind, he had the audacity not only to avow the fact, but to justify it. If, as there is reason to suppose from his attempt at justification, he really felt the desire expressed in his prayer, the safety of the complainant was in jeopardy while cohabiting with him. He sets up as matter of defence, his unfortunately irritable and ungovernable temper. If there was a strong desire to get rid of his wife, obtaining utterance in prayer, this ungovernable temper might engage his own hand in the execution of his wish. We all know how much fire judgment is perverted and the con *502 science weakened, under the influence of a strong desire to sin; and in this case, such an influence might soon make the thought father to the deed. But if no such settled feeling existed, and the prayer was only intended for the ear of his wife, with a view to irritate and wound her feelings, language is wanting to express the indignant reprobation which every virtuous mind must feel, at the brutality, the hypocrisy, and the profanity of the act. He is a member of the church; his wife is also a member, most exemplary and pious. She surrounds the family alter as a matter of duty and pious privilege, while he, profanely calling upon God, insults her, by expressing his wish that she should be removed fromhim; and this she is compelled to hear, causing her own feelings, which would have been employed in pious devotion, to be outraged and insulted. I know not what course of conduct would render the situation of an educated, sensitive, and polished lady intolerable, if that adopted by this defendant shall be considered as inadequate to effect such an end. He is in the habit of using language to her, which a gentleman will not employ to his slaves; he threatens to drive her from his house; he slaps and chokes her; and, at the family alter, in her presence he prays God to deliver him from her. We think she would ill deserve the character of refinement, sensibility, and lady-like feeling, which the witnesses give her, if she did not feel that to remain in his house, and endure all this, was intolerable.
By the act of 1841-2, ch. 133, the court is authorized to decree a divorce from the bonds of matrimony in all cases, where by the act of 1835 a divorce was authorized from bed and board; and we think, upon all the facts of this case, the complainant is entitled to such a decree.
Let the Master report what property the defendant received by his marriage with the complainant, and which he yet owns, and let the whole of it be vested in a trustee, for the use and support of the complainant and her children.
Reverse the decree of the Chancellor, and decree as above directed.